**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA L. HEATHER, | ) | CASE NO. 5:24-CV-375-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL ARMSTRONG |
| SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

## I.    INTRODUCTION

The Commissioner of Social Security denied Plaintiff Jessica L. Heather's application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Ms. Heather seeks judicial review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., ECF No. 1.) This matter is before me pursuant to Local Rule 72.2(b). (*See* ECF non-document entry dated February 29, 2024).

For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

In August 2021, Ms. Heather applied to the Social Security Administration (SSA) seeking SSI and DIB benefits; she claimed that she became disabled on June 30, 2021. (Tr. 81, 222, 229, 244.)[1] She identified nine allegedly disabling conditions: (1) "fell and broke knee on 6/30/2021,"

---

[1] The administrative transcript appears at ECF No. 5. I will refer to pages within that transcript by identifying the Bates number printed on the bottom right-hand corner of the page (e.g., "Tr. 14"). I will refer to other documents in the record by their CM/ECF document numbers (e.g., "ECF No. 6") and page-identification numbers (e.g., "PageID# 815").

(2) "[two] knee surgeries already," (3) "2006 lobe on left lung removed," (4) "2013 back surgery done – lift restrictions," (5) depression, (6) malnourishment, (7) "drinking too much alcohol," (8) "acute stress," and (9) emphysema. (Tr. 248.)

The Social Security Administration ("SSA") denied Ms. Heather's application initially and upon reconsideration. (Tr. 81–82, 110, 120, 127, 132, 140, 143.) Ms. Heather requested a hearing before an administrative law judge ("ALJ"). (Tr. 147.) The ALJ held a hearing on March 13, 2023, at which Ms. Heather was represented by counsel. (Tr. 37–76.) Ms. Heather testified, as did an independent vocational expert ("VE"). (*Id.*)

On May 5, 2023, the ALJ issued a written decision finding that Ms. Heather is not disabled. (Tr. 30).

Ms. Heather requested review of the ALJ's decision. On January 2, 2024, the SSA Appeals Council denied review, rendering the ALJ's decision final. (Tr. 1.)

On February 28, 2024, Ms. Heather filed her Complaint, challenging the Commissioner's final decision that Ms. Heather is not disabled. (ECF No. 1.) Ms. Heather asserts the following assignments of error:

> First Assignment of Error: The ALJ erred at Step Three of the Sequential Evaluation when he failed to find that Plaintiff met and/or equaled the criteria of Listing 1.17.

> Second Assignment of Error: The ALJ erred at Step Five of the Sequential Evaluation when he found Plaintiff could perform work at the light level of exertion and failed to include in his RFC the need for a cane or other assistive device.

(ECF No. 6, PageID# 815.)

### III.    BACKGROUND[2]

#### A.    Personal, Educational, and Vocational Experience

Ms. Heather was born in June 1969 and was 52 years old on the date of her application. (Tr. 29, 47). She has a high school degree. (Tr. 49, 249.) She is not married and has no children. (Tr. 48–49). Ms. Heather worked as a night auditor at a hotel between 2009 and May 2017, completing administrative work like billing and filling out forms; she also prepared breakfast for guests. (Tr. 50, 257.) As of September 2021, she was living with a parent. (Tr. 265.)

#### B.    Function Report

Ms. Heather completed a function report (SSA Form 3373) in September 2021. (Tr. 265–72.) She described that she was "non-weight bearing" on her left leg and reported that she woke up every three to four hours at night. (Tr. 265–66) She wrote that she did not cook but was able to perform light cleaning, including doing the dishes and sweeping. (Tr. 267.) She described that she needs a "walker" to get around and needs help putting dishes away and getting the broom and dustpan for sweeping. (*Id.*, *see also* Tr. 271.) She stated that she was not able to drive and shops for food over the phone. (Tr. 268.) She reported that she could walk ten to fifteen feet at one time before needing to rest for a "minute or so." (Tr. 270.)

#### Relevant Hearing Testimony

##### *1.    Ms. Heather's Testimony*

Ms. Heather testified that she broke bones around her knees on June 30, 2021. (Tr. 54.) After surgeries, she used a wheelchair and then transitioned to other devices to assist her in ambulating. (*Id.*) At the time of the hearing, Ms. Heather was "back on [her] feet" but used a cane

---

[2] Ms. Heather's assignments of error relate solely to the ALJ's consideration of the physical limitations stemming from her leg surgeries; therefore, I limit my discussion of the factual background to those facts relevant to the condition of Ms. Heather's left leg and her ability to ambulate without an assistive device.

and said she was "slow going." (Tr. 55.) She testified that she did not need a cane to move around inside a house "or in a building where there is a flat surface," but had trouble with steps and on ground that is not level. (Tr. 55–56.)

Ms. Heather testified that she has done a lot of walking at a medical facility and estimated that she can walk for about two and a half minutes before needing to sit and stretch her leg. (Tr. 57.) She can sit for about 45 minutes before needing to get up and move around. (Tr. 56.) She estimated that she could only lift items that are under 20 pounds. (Tr. 58.)

On examination by her counsel, Ms. Heather clarified that she uses a cane when walking at the medical facility. (Tr. 65.) She said she could walk without the cane except that there are ramps in the facility and "I don't trust myself" on them because "my leg is so shaky." (Tr. 66.)

## 2.  *Vocational Expert's Testimony*

Gail Klier testified as a vocational expert. (Tr. 67.) Ms. Klier classified Ms. Heather's past work as a composite job consisting of the work of a "night auditor, hotel and restaurant" (DOT 210.382-054) and a "food assembler" (DOT 319.484-010). (Tr. 68.) Ms. Klier opined that a night auditor is classified as a sedentary position, but Ms. Heather performed it at a medium exertional level. (*Id.*) Ms. Klier opined that a food assembler is classified as a light-exertional-level position, which she said is consistent with Ms. Heather's testimony. (*Id.*)

In his first hypothetical question, the ALJ asked Ms. Klier to consider a hypothetical individual with Ms. Heather's age, education, and experience who could perform the full range of light work but who was more physically limited as follows: the individual could occasionally climb ramps or stairs but would never climb ladders, ropes, or scaffolds; the individual could occasionally balance or stoop but would never kneel, crouch, or crawl; the individual would never be exposed to unprotected heights or hazardous machinery; the individual would avoid

concentrated exposure to humidity or extreme cold or extreme heat.

Ms. Klier testified that such an individual could not perform any of Ms. Heather's past relevant work, but there were other jobs that exist in the national economy which the individual would be able to perform. (Tr. 69–70.) Such a person could do the work of a "marker" (DOT 209.587-034), a "mail clerk" (DOT 209.687-026), or a "routing clerk" (DOT 222.687-022). (Tr. 70.)

The ALJ next asked Ms. Klier to imagine that the hypothetical individual had an additional limitation, in that they could only perform sedentary work subject to the same additional limitations. (Tr. 71.) Ms. Klier testified that such a person could perform the work of a "polisher of eyeglass frames" (DOT 713.684-038), "surveillance system monitor" (DOT 379.367-010), or "document preparer" (DOT 249.587-018), except that a "document preparer" would not be working with microfilm as the *Dictionary of Occupational Titles* suggests but rather would be scanning documents and otherwise working with documents. (Tr. 71–72.)

The ALJ next asked Ms. Klier to imagine that the same hypothetical person could perform work at the light exertional level, but only if they were able to use a cane for all ambulation and only if they could neither stand nor walk for more than five minutes consecutively throughout the workday. (Tr. 72.) Ms. Klier testified that there was no work in the national economy that such an individual could perform. (*Id.*)

Finally, the ALJ asked Ms. Klier to imagine that the person from the first hypothetical question would be off-task 20 percent of the time and would be absent three times per month. (Tr. 72.) Ms. Klier opined that being off-task more than nine percent of the time is work-preclusive if chronic (three consecutive months or more); similarly, being absent three times per month is work-preclusive if chronic. (Tr. 73.)

5

### 1.  **State Agency Consultants**

#### a.  *Initial Level*

A disability examiner (Shannon Hopp), a physician (Leon Hughes, M.D.), and a psychologist (Jaime Lai) reviewed Ms. Heather's claim at the initial administrative level. (Tr. 81–82.) Dr. Hughes opined that, while Ms. Heather reported that she could not bear weight on her left leg, the medical records show that this condition was "due to surgery and when considering duration, [she] will continue to improve." (Tr. 87.) The consultants concluded that when Ms. Heather is a year out from her surgery, she would be able to stand and/or walk (with normal breaks) and sit (with normal breaks) for about six hours each out of an eight-hour workday. (Tr. 88.) They recommended certain postural limitations. (Tr. 89.) They found that Ms. Heather is limited to unskilled work at the light exertional level, but they found that she would be capable of performing the work of occupations such as "automatic car wash attendant" (DOT 915.667-010), "photocopying machine operator" (DOT 207.685-014), or "folder, laundry" (DOT 369.687-018). (Tr. 91.)

Based on these findings, the consultants found that Ms. Heather was not disabled. (*Id.*)

#### b.  *Reconsideration Level*

At the reconsideration level, a disability examiner (Kaleigh Matthews), a physician (Abraham Mikalov, M.D.) and a psychologist (Aracelis Rivera, Psy.D.) affirmed the finding that Ms. Heather is not disabled. (Tr. 109–10, 119–20.) They concluded that the findings at the initial level were "consistent with and supported by the totality of the evidence," including the additional evidence received at the reconsideration level. (Tr. 117–18.)

### C.  **Relevant Medical Evidence**

Ms. Heather reported to doctors that on June 30, 2021, she was doing laundry when she

fell down the stairs and injured her knee. (*E.g.*, Tr. 616.) She sought medical attention on July 2, 2021, and was diagnosed with a tibial shaft fracture in the left leg. (Tr. 563.) The emergency-room physician noted that Ms. Heather reported that she was "a nonambulator" and used a wheelchair at home. (Tr. 558.) Ms. Heather said she was in a wheelchair at the time of the fall. (*Id.; but see* Tr. 453 (stating that Ms. Heather was walking up the stairs when she fell).) Doctors placed her in a splint and advised her to use a wheelchair or crutches until she could consult with an orthopedic doctor. (*Id.*) Ms. Heather declined observation and remained partially weightbearing on the leg, against medical advice, which aggravated the injury from the fall. (*E.g.*, Tr. 561, 607, 618.) Doctors then placed external fixation on the knee pending surgery. (Tr. 555, 590, 618.) Ms. Heather was discharged to a skilled nursing facility after that procedure. (*E.g.*, Tr. 448.)

A computed tomography (CT) scan revealed that Ms. Heather had suffered a comminuted, mildly impacted fracture of the proximal tibia extending into the femorotibial joint. (Tr. 658.) The scan also revealed that Ms. Heather suffered a "minimally" impacted fracture of the fibula. (Tr. 658.)

Dr. Frederick Korpi, an orthopedic surgeon, evaluated Ms. Heather on July 21, 2021. (Tr. 677–78.) Dr. Korpi assessed that open-reduction-internal-fixation surgery was needed; based on the surgical plan, Dr. Korpi estimated that Ms. Heather would need to be non-weightbearing for three months after the surgery. (Tr. 557, 678.)

On July 22, 2021, Ms. Heather underwent open-reduction-internal-fixation surgery on the leg, during which plates and screws were inserted. (Tr. 733.) The surgeon opined that Ms. Heather "must remain nonweightbearing" on the leg and advised that Ms. Heather may need a total knee replacement in the future. (*Id.*) She was discharged the following day, with instructions to be "strict nonweightbearing" on the leg and with a plan to engage in rehabilitation. (Tr. 674, 697.) She

entered a skilled nursing facility for several days and was discharged with a recommendation to use a "forward wheeled walker" for ambulation. (Tr. 476, 523.) She was ultimately unable to complete physical therapy at home. (Tr. 665.)

Dr. Korpi saw Ms. Heather for a post-operative appointment on August 4, 2021. (Tr. 609.) Dr. Korpi advised that Ms. Heather begin range-of-motion exercises but cautioned her to remain non-weightbearing on the left leg. (Tr. 611.) Dr. Korpi was concerned that Ms. Heather's continued smoking of cigarettes would negatively affect the bone healing. (*Id.*)

Ms. Heather was in a wheelchair when she consulted with Jefferie Wilhelm, a nurse practitioner associated with a primary care practice, on August 9, 2021. (Tr. 541.)

Dr. Korpi saw Ms. Heather for a follow-up appointment on September 1, 2021. (Tr. 612.) Dr. Korpi noted that the bones were not healing as fast as he had hoped, this being six weeks after her surgery, a fact that he attributed to Ms. Heather's continued smoking of cigarettes. (*See* Tr. 614.) Dr. Korpi repeated that Ms. Heather could not walk on the leg until three months had passed since the surgery. (*Id.*) But she had a full range of motion and was "not having significant pain." (Tr. 615.)

On September 15, 2021, Ms. Heather underwent a physical examination with Mr. Wilhelm. (Tr. 785.) Mr. Wilhelm noted that Ms. Heather was in a wheelchair and, while "well developed" and "well nourished," appeared "thin." (*Id.*) Ms. Heather wore a brace on her left knee. (Tr. 786.) Mr. Wilhelm noted that the surgical incisions on her leg appeared to be healing well. (*Id.*) Ms. Heather denied muscle weakness, joint pain, joint swelling, or stiffness. (Tr. 787.)

Ms. Heather was examined by Mr. Wilhelm again on October 19, November 18, and December 17, 2021, complaining of weight loss, depression, and insomnia. (Tr. 760, 765, 771.) At these appointments, Ms. Heather again denied muscle weakness, joint pain, joint swelling, or

stiffness. (Tr. 762, 768, 773.)

Ms. Heather was evaluated by Bryan Krabbe, Psy.D., on December 8, 2021, for purposes of her application for disability benefits. (Tr. 643–49.) Dr. Krabbe noted that Ms. Heather drove herself to the appointment and reported that she could see to her personal hygiene, perform household chores, and prepare "basic" meals, "but was slowed by physical pain." (Tr. 645–46.) She stated that she does not shop for groceries "due to anxiety." (*Id.*) Ms. Heather "moved at a slow rate of speed with a cane." (Tr. 646.)

On January 14, 2022, Ms. Heather was ambulating with a cane when she consulted with Dr. Jeffrey Cochran, D.O. (Tr. 651.) Ms. Heather was complaining of knee pain, describing a "constant achiness with intermittent sharp shooting pain" that was aggravated by "walking on uneven ground, pivoting, ambulating stairs, [and] crossing legs" and that was improved by "physical therapy, walking with a cane, [and] resting." (*Id.*) X-ray imaging revealed that the fracture itself "appeared to be healed." (Tr. 668.) But Dr. Cochran assessed that the surgical hardware was easily palpable through the skin and documented that he was concerned that "over time the hardware will erode through her skin." (Tr. 652 (typographical error corrected).)

After evaluating Ms. Heather on March 14, 2022, Dr. Daniel Moretta, an orthopedic doctor, concurred that the hardware should be removed. (Tr. 667.)

Ms. Heather underwent surgery on March 17, 2022, to remove the hardware from her left leg. (Tr. 742–43.) The surgical notes indicate that the procedure went smoothly, and no complications were noted. (*See id.*) Ms. Heather was prescribed pain medication and was cleared to "weight-bear as tolerated." (*Id.*)

Ms. Heather had a follow-up appointment with Dr. Moretta on April 1, 2022. (Tr. 738.) Ms. Heather complained of "mild tenderness" at the surgical site, which Dr. Moretta characterized

as normal. (*See id.*) Ms. Heather stated that she had not placed weight on the leg and ambulated with the assistance of a walker at the appointment. (*Id.*) But after a physical examination and after reviewing x-ray images of the leg, Dr. Moretta opined that Ms. Heather had full range of motion and was "able to bear weight and ambulate without difficulty." (Tr. 739.) Indeed, Dr. Moretta recommended that Ms. Heather "stay strong and active, avoiding bed rest." (*Id.*)

Ms. Heather was examined by Mr. Wilhelm on April 11, 2022. (Tr. 748.) Ms. Heather reported that she opted against receiving physical therapy after her hardware-removal surgery. (*Id.*) Mr. Wilhelm assessed that Ms. Heather's surgical scar was "well healed." (Tr. 752.)

## IV.    THE ALJ'S DECISION

The ALJ first determined that Ms. Heather had not engaged in substantial gainful activity since May 23, 2017, the alleged disability-onset date. (Tr. 19.)

The ALJ next determined that Ms. Heather had the following severe impairments: chronic obstructive pulmonary disease (COPD); status-post lobe resection; fracture of left proximal tibia, fibula, and tibial plateau; status-post open reduction and internal fixation surgery; other, specified, depressive disorder; and unspecified alcohol-related disorder. (Tr. 20.)

The ALJ determined, however, that none of Ms. Heather's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 20.)

The ALJ further determined that Ms. Heather had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant may occasionally balance, stoop, climb ramps and stairs, but may never kneel, crouch, crawl, climb ladders, ropes, or scaffolds; the claimant must avoid all exposure to unprotected heights and hazardous machinery; the claimant must avoid concentrated exposure to humidity, extremes of heat and cold; the claimant is limited to the

10

> performance of simple, routine tasks and to the making of no more than simple, work-related decisions, conducted in a work setting that requires no more than occasional interaction with co-workers, supervisors, or the public, which setting is routine, in that it contemplates few changes.

(Tr. 22.)

The ALJ next determined that Ms. Heather is unable to perform any past relevant work, reasoning that (1) the restriction to light work prevents Ms. Heather from returning to her job as a hotel night auditor, which would need to be performed at the medium level of exertion and (2) the restriction to unskilled work also prevents Ms. Heather from returning to the job, which would need to be performed at a specific-vocational-preparation factor of five. (Tr. 28.)

However, the ALJ determined that, considering Ms. Heather's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Ms. Heather could perform, including work as a "marker" (DOT 209.587-034), "mail clerk" (DOT 209.687-026), or "routing clerk" (DOT 222.687-022). (Tr. 29.) Accordingly, the ALJ determined that Ms. Heather is not disabled. (Tr. 30.)

## V. LAW & ANALYSIS

### A. Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (cleaned up) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Consolidated Edison*, 305 U.S. at 229).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, . . . a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B.   <u>Standard for Disability</u>

Consideration of disability claims follows a five-step review process. 20 C.F.R. § 416.920. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful

activity" at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (quoting 20 C.F.R. §§ 404.1520(c) and 416.920(c)).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. § 416.920(d).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 416.920(e). An RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1). Agency regulations direct the ALJ to consider the functional limitations and restrictions resulting from a claimant's medically determinable impairment or combination of impairments, including the impact of any related symptoms on the claimant's ability to do sustained work-related activities. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *5 (July 2, 1996).

 "A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250 (N.D. Ohio Feb. 1, 2019). The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531

F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support [the ALJ's] decision, especially when that evidence, if accepted, would change [the ALJ's] analysis." *Golden*, 2018 WL 7079506 at *17.

At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 416.920(e)–(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. § 416.920(g). *See Abbott*, 905 F.2d at 923.

### C.    Analysis

In her first assignment of error, Ms. Heather contends that the ALJ erred at the third step of the sequential-evaluation process. Specifically, she argues that the ALJ misstated the evidence relevant to her history of leg surgery and subsequent difficulty in ambulating without an assistive device. She points to the following portion of the ALJ's recitation of the facts:

> By October 2021, she started walking again (9F/3). She exhibited a normal gait in March 2022 (14F/3) and was ambulating without difficulty in April 2022 (16F/2). The treatment records end, for all purposes, in April 2022. Regardless of such other elements of this listing as may be present in the record, the evidence[] does not support that the claimant requires use of a hand-held, gait-assistive device.

(Tr. 20.)

Ms. Heather is correct that the ALJ's citation to Exhibit 9F is incorrect; the third page of that exhibit is from an appointment in June 2021. (Tr. 608.) The ALJ is technically correct that Ms. Heather had begun walking again by October 2021; she began walking on the leg against medical advice before the external-fixation surgery. (Tr. 616 ("She has been partially weight bearing on the leg with a walker.").) Ms. Heather's orthopedic doctor anticipated that she would

14

be walking again three months after the ORIF surgery, which would mean the end of October 2021, but as of September 2021 the bones had not healed as much as the doctor expected. (Tr. 614.) Notes from primary-care office visits in October, November, and December do not mention whether Ms. Heather was regularly walking, although she is noted to have used a wheelchair during the October and November appointments. (*See* Tr. 769, 774.) But it is clear that she was regularly walking with a cane by December 8, 2021. (Tr. 646.) Ms. Heather's fracture was confirmed to have healed by mid-January 2022. (*See* Tr. 668.)

The ALJ correctly noted that Ms. Heather—while complaining of pain ambulating and limited range of motion—exhibited normal posture and gait at an appointment in March 2022. (Tr. 667.) Further, after Ms. Heather underwent surgery to remove the ORIF hardware in March 2022, she was medically cleared to "weight-bear as tolerated." (Tr. 742–43.)

The ALJ wrote that Ms. Heather "was ambulating" without difficulty by April 2022. It might be clearer to have said that her doctor assessed that she was *able to* ambulate without difficulty by then. (*See* Tr. 739.) In practice, Ms. Heather reported that she had not been placing weight on the leg and ambulated with a cane or walker. But Ms. Heather's orthopedic doctor concluded that she had full range of motion and was "able to bear weight and ambulate without difficulty." (Tr. 739.) Indeed, the doctor recommended that Ms. Heather "stay strong and active, avoiding bed rest." (*Id.*) Ms. Heather opted against receiving physical therapy after her hardware-removal surgery. (Tr. 748.)

At the hearing in March 2023, Ms. Heather described that she did not need a cane to ambulate on level ground but used a cane to assist her with steps and ramps. (Tr. 55–56.) There is no medical evidence in the record documenting a medical assessment of her ability to ambulate after April 2022.

I find that the ALJ's recitation of the facts of Ms. Heather's recovery from her leg injury was materially accurate and sufficient to "build an accurate and logical bridge between the evidence and the result." *E.g.*, *Griffith v. Colvin*, Case No. 1:13cv2502, 2014 WL 5858337, *3 (N.D. Ohio Nov. 12, 2014). It was further consistent with Ms. Heather's hearing testimony, in which she described that she first used a wheelchair after her surgery before transitioning to other devices such that, by the time of the hearing, she was "back on [her] feet" except that she used a cane and described herself as "slow going." (*See* Tr. 55.)

Having found no material errors in the ALJ's recitation of the facts, I turn to a consideration of Ms. Heather's argument that her condition met or equaled the Listing 1.17 criteria. The agency responds that the evidence established, at most, that Ms. Heather used a walker and then a single cane for a portion of a 12-month period, which it says does not meet the Listing 1.17 criteria.

"The Listing of Impairments . . . describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1525(a)). "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing'" and "[a] claimant must satisfy all of the criteria to 'meet' the listing." *Id.* (quoting 20 C.F.R. § 404.1524(c)(3)). "[T]he claimant must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014).

To meet the criteria of Listing 1.17, Ms. Heather must show three things:

> (1)     A history of reconstructive surgery of a major weight-bearing joint;
>
> (2)     An impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months; and

(3)     A documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands.

20 C.F.R. Pt. 404, Subpart P, App'x 1, § 1.17.

Here, the ALJ correctly found that the second and third criteria were not met here. After undergoing reconstructive surgery on her knee in July 2021, the medical evidence shows that doctors anticipated that Ms. Heather would be able to begin walking on the leg after three months. While the healing was slower than expected, Ms. Heather was ambulating with a single cane by at least December 2021 and the joint was fully healed by February 2022. Ms. Heather was cleared to "weight-bear as tolerated" immediately after her March 2022 surgery to remove the hardware. By April 2022, Ms. Heather was able to fully bear weight and ambulate normally.

In other words, the impairment-related physical limitations stemming from the surgery did not last longer than twelve months and—as of April 2022—there was no *documented medical need* for a walker, bilateral canes, bilateral crutches, or other enumerated assistive device. *See* 20 C.F.R. Pt. 404, Subpart P, App'x 1, § 1.00.C.6.a ("When we use the phrase 'documented medical need,' we mean that there is evidence from a medical source that supports your medical need for an assistive device . . . for a continuous period of at least 12 months . . . . This evidence must describe any limitation(s) in your upper or lower extremity functioning and the circumstances for which you need to use the assistive device.").

Further, even if Ms. Heather's continued use of the single cane was consistent with the medical evidence, her testimony revealed that she used a single cane, not bilateral canes as set forth in the listing. Finally, there is no evidence from a medical source describing how Ms. Heather walks with the cane. *See* 20 C.F.R. Pt. 404, Subpart P, App'x 1, § 1.00.C.6.d ("If you use a hand-held assistive device, we need evidence from a medical source describing how you walk with the

device.").

Ms. Heather argues that "even if she did not satisfy each and every element" of the listing, "the combination of her multiple severe impairments equaled the criteria" because "she was using an assistive device throughout the requisite period of time and was still using a cane at the time of the hearing" (Merits Br., ECF No. 6, PageID# 822.) But she does not argue how her combination of severe impairments—which she says limited her to using a single cane more than a year after her surgery—equaled the severe, bilateral impairment contemplated by the listing. I find her undeveloped argument on this point to be unconvincing.

For these reasons, Ms. Heather's first assignment of error is without merit.

In her second assignment of error, Ms. Heather contends that the ALJ erred at the fifth step when he found that Ms. Heather could perform work at the light exertional level without the need for a cane or other assistive device, in violation of SSR 96-9p.

SSR 96-9p states as follows:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P, 1996 WL 374185, *7 (July 2, 1996).

Ms. Heather's argument on this point is largely focused on her self-reported description of her recovery, in which she described herself as "slow going" and described using a cane for unsteadiness on stairs and uneven surfaces more than a year after her ORIF surgery; she also points out those areas of the medical record where doctors identify her as using a walker, wheelchair, or

cane.

The agency responds that there is no evidence in the record documenting the circumstances in which the cane is needed, and therefore the ALJ could not determine that it was a "necessary device" under SSR 96-9p.

After a careful review of the record, I find no reversible error in the ALJ's conclusion or explanation on this issue. The ALJ's conclusion is supported by substantial evidence.

The standard for "substantial evidence" is "not high." *Biestek*, 139 S.Ct. at 1154. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

"It is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered" so long as the ALJ does not "selectivity include[] only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability." *Borawski v. Comm'r of Soc. Sec.*, No. 1:20-CV-01091-JDG, 2021 WL 811717, at *15 (N.D. Ohio Mar. 3, 2021); *see also Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *9 (N.D. Ohio Feb. 21, 2019) ("While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss all the

evidence").

Here, the ALJ found that Ms. Heather's complaints of left knee pain were supported by the

medical evidence, but

> [i]n sum, the evidence would indicate that the symptom limitations relevant
> to these impairments are not as severe as alleged. If restricted to the
> performance of work at the light exertional level, where she would
> occasionally balance, stoop, climb ramps and stairs, but would never kneel,
> crouch, crawl, climb ladders, ropes, or scaffolds; where the claimant would
> avoid all exposure to unprotected heights and hazardous machinery; and,
> where the claimant would avoid concentrated exposure to humidity,
> extremes of heat and cold, adequate allowance will have been made for
> these impairments.

(Tr. 24–25.)

In coming to these conclusions, the ALJ acknowledged Ms. Heather's hearing testimony

that she had significant limitations with respect to her ability to "lift, squat, bend, stand, walk,

kneel and climb" after breaking the bones in her leg. (Tr. 23.) But he noted that the medical

evidence was inconsistent with the alleged continued severity of those limitations because each of

her surgeries were completed without complication, the fracture healed effectively with

appropriate alignment, clinical evaluations in 2022 documented that she was ambulatory with a

cane, and—in April 2022—her surgeon opined that she had the ability to bear weight and ambulate

without difficulty and recommended that she remain active avoid bed rest. (Tr. 24.) The ALJ

further noted that no medical evidence had been submitted covering any period after April 2022.

(*Id.*)

I agree with the Commissioner that here there is no "medical documentation establishing

the need for a hand-held assistive device to aid in walking or standing" or "describing the

circumstances for which it is needed." *See* SSR 96-9p, 1996 WL 374185, *7 (July 2, 1996). I

further find that the ALJ "consider[ed] the particular facts" of this case in crafting the RFC. *See*

*id.* There was, therefore, no violation of SSR 96-9p and the ALJ's RFC was supported by substantial evidence.

An ALJ is not required to include limitations in an RFC that the ALJ finds are not applicable, even where the VE testifies that those limitations would be work preclusive. *See Rudd*, 531 F. App'x at 730 (holding that an ALJ is not "required to rely on a VE's response based on limitations that she rejected"); *Roberts v. Comm'r of Soc. Sec.*, No. 4:16 CV 2533, 2017 WL 5501323, at *13 (N.D. Ohio Oct. 19, 2017) ("an ALJ is not required to rely on a VE's response to limitations the ALJ ultimately does not adopt").

Ms. Heather directs the Court to *Pahanish v. Comm'r of Soc. Sec.*, Case No. 3:18CV38, 2019 WL 480992 (N.D. Ohio Feb. 7, 2019), in support of her argument. But the case is readily distinguishable. In *Pahanish*, a physical therapist and a nurse practitioner both opined that the claimant required the use of a cane. *See Pahanish*, 2019 WL 480992, at *3. The magistrate judge found that, under those circumstances, the ALJ erred by not including the requirement that the claimant use a cane in the RFC. *See id.* at *5. Here, no medical professional has opined on the necessity that Ms. Heather use a cane, let alone describe how she uses it or state when it is required. To the contrary, in April 2022 her orthopedic doctor assessed that Ms. Heather had full range of motion and was "able to bear weight and ambulate without difficulty." (Tr. 739.) Indeed, the doctor recommended that she "stay strong and active, avoiding bed rest." *Id.*; *see also Bass v. Kijakazi*, Case No. 4:22-cv-03702, 2023 WL 8114373, *5 (S.D. Tex. Nov. 22, 2023) (ALJ properly concluded that the claimant did not require a cane to walk where the allegation was contradicted by normal medical findings and where doctors advised her "to not use a wheelchair constantly because she needed to try to use those muscles to avoid losing muscle mass."). And the ALJ's conclusion is consistent with the opinion testimony of the state disability consultants.

For these reasons, I find that the ALJ did not violate SSR 96-9p and his RFC is supported by substantial evidence. *See also White v. Saul*, Case No. 1:20-cv-236, 2021 WL 1145463, *8 (N.D. Ohio Mar. 25, 2021) ("Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device.") (collecting cases)*; Christopher W. v. Comm'r of Soc. Sec.*, 3:23-CV-1106 (DJS), 2024 WL 3846069, *2–3 (W.D. Pa. Aug. 16, 2024) (RFC adequately supported when there was no evidence of medical necessity for assistive device, even where doctors had noted that the claimant used an assistive device and he reported that he needed one to ambulate).

Ms. Heather's second assignment of error is, therefore, without merit.

## VI.     RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: November 21, 2024

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those

portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).